Morss *vs.* Stone.

After evidence has been given by the plaintiff, in regard to a mortgage, without objection, and several inquiries in regard to its contents have been made by the defendant, both parties will be considered as having acquiesced in receiving parol evidence of the mortgage; and the defendant cannot then object to the plaintiff's proving at what time the mortgage fell due.

Receiving goods from another, upon an agreement to sell and account for such goods to the owner, or to return the same, as good as when taken, with interest, amounts to a *bailment* and not to a *sale;* and the property remains in the bailor.

Where, in an action of replevin, there is proof tending to show that a part of the goods replevied does not belong to the plaintiff but to another person, the judge should charge the jury that if they find that any part of the goods belongs to a third person the defendant is entitled to a verdict for the value of those goods.

Replevin, tried at the Greene circuit, in April, 1848, before Harris, justice.  The goods replevied were taken by the defendant from the possession of one Peter Dutcher, by virtue of an execution against him in favor of Daniel C. Scudder.  The plaintiff introduced Dutcher as a witness, on the trial, for the purpose of showing that the property did not belong to Dutcher at the time it was levied on, but to the plaintiff, it having been merely delivered to Dutcher to sell, as a pedler; he accounting to the plaintiff for the goods sold, at certain specified prices, and being entitled to all he should receive beyond those prices, for his own benefit.  Dutcher testified that the goods were taken from his possession by the defendant, who claimed to take them by virtue of an execution against him in favor of Scudder; that the goods were in a wagon box or pedler's wagon, with which he was travelling around the country peddling; that he obtained the goods at the plaintiff's store, of Morss the plaintiff, and of Morss & Finch; that after the levy that portion of the goods which belonged to the plaintiff were separated from those belonging to Morss & Finch, and they were inventoried separately; that a price was fixed for the

goods when he got them, the price he was to pay for them; that witness was to pay when he sold the goods; that he had obtained from the store goods to the amount of about $200, and had paid the plaintiff or returned on account of the goods, about $60 or $70; that a price was fixed for every article, and witness was to pay that sum when the goods were sold, receiv-ing for his own use what profits he could make on the goods, and the goods not sold by him were to be returned; that he had a horse in his possession on which the plaintiff had a mortgage; that the wagon in his possession belonged to the plaintiff and Finch his former partner. The plaintiff's counsel offered to show by this witness that the mortgage was due at the time he peddled. This evidence was objected to by the defendant's counsel, and the objection was overruled. The witness then testified that he thought the mortgage was due the next fall; that before he commenced peddling he gave the following receipt for the first bill of goods: "Received, Pratts-ville, March 23d, 1847, of N. P. Finch & Co. a stock of goods as per bill this day received from Jasper Carle, to sell and ac-count for to the amount of $293,86, or return the same as good as when taken, with the interest, and I am to use the wagon and sleigh belonging to said Finch & Co. while selling said goods.                              PETER DUTCHER."

The witness testified that in May, 1847, he got some goods of McLean, a partner of the plaintiff, but did not know whether McLean knew of the arrangement with Morss or not; that McLean said he would see Morss, and soon after the witness went and got some goods; that some of these goods were in the lot taken by the defendant. It was proved that McLean was a partner of Morss at the time these goods were obtained. Dutcher also testified that he received from the plaintiff goods at different times during the summer and fall; and that in No-vember he received a bill of goods, for which he gave his note. The judge charged the jury that the principal question in the case was whether the goods delivered to Dutcher were delivered to him to be sold for the plaintiff, or upon an absolute purchase by Dutcher; that the contract under which the goods were re-

ceived was contained in the receipt of the 23d of March; that upon its face that contract amounted to a bailment and not a sale; and that if the jury should believe that the goods were delivered upon the terms stated in that receipt the plaintiff was entitled to recover. The judge further charged that although the giving of the note for the November bill of goods was evidence of a sale, it was subject to explanation; and if from the evidence, they should believe that the goods were in fact delivered upon the terms stated in the receipt, the plaintiff was also entitled to recover as to those goods. To this charge the defendant excepted. The jury found a verdict for the plaintiff, and assessed the value of the property at $91,75; and the defendant having filed a bill of exceptions, moved for a new trial.

*H. Hogeboom*, for the plaintiff.

*D. K. Olney*, for the defendant.

*By the Court*, PARKER, J.   I think the learned justice, before whom this cause was tried at the circuit, decided correctly in receiving parol evidence to show when the mortgage held by the plaintiff on Dutcher's horse became due. The defendant's counsel had previously given some evidence in regard to that mortgage, and this objection was not made till the plaintiff's counsel had also made several inquiries in regard to its contents. The defendant's counsel could not then object to proving the single fact when the mortgage fell due, without also objecting to all the previous evidence of its contents. I think it must be held that both parties had acquiesced in receiving parol evidence of the mortgage. As to the materiality of the evidence, it was certainly proper to prove when the mortgage fell due, with a view to ascertain whether the plaintiff had obtained an absolute title to the property mortgaged. (*Pierce* v. *Patchin*, 12 *Wend*. 61.)  I concur also entirely in the decision made at the circuit, that the receipt of the 23d of March, upon its face, showed a contract of bailment, and not a sale.  (*Hurd* v. *West*, 7 *Cowen*, 752.)  It was not at all like

Morss v. Stone.

the case of *Marsh* v. *Nickerson*, (14 *John. Rep.* 167,) relied on by the defendant's counsel. If the contract between Morss and Dutcher was in accordance with the receipt, it is clear that the title to the property continued in the plaintiff.

I do not understand that the judge at the circuit decided, as the defendant's counsel supposes, that the goods were delivered upon the terms mentioned in the receipt; though there is certainly one expression in the charge from which, standing alone, that would seem to have been said. On the contrary, the whole charge taken together, shows that that question was properly submitted to the jury as a question of fact for their determination.

But there is another point made by the defendant's counsel, that seems to me to be well taken. The court was asked on the trial to charge the jury, that if they should find, from the evidence, that Dutcher had any goods of McLean, or of Morss & McLean, for which he gave his note, which were levied on by the defendant, the defendant must have a verdict for the value of those goods. The court refused so to charge, and the defendant's counsel excepted. I think the judge should have charged as requested. There was proof tending to show that goods had been purchased of McLean when a partner of Morss, a part of which had been replevied; and it was for the jury to find whether any of the goods, when replevied by the plaintiff, belonged to any other person. If they should find any of the goods belonged to McLean or to Morss & McLean, the defendant would have been entitled to a verdict for such goods, and to a return of the property.

I think this question should have been submitted to the jury; and it not having been so submitted, a new trial should be granted; costs to abide the event.

New trial granted.