In the Matter of the Estate of MARY E. HOPKINS, Deceased.

Surrogate's Court, Oneida County, January 20, 1937.

*Larkin & Gualtieri* [*M. J. Larkin* of counsel], for the petitioner.

*Estabrook, Estabrook & Harding* [*William M. Harding* of counsel], for the Syracuse Trust Company.

No appearance by Fred J. O'Neil, former executor.

EVANS, S. This is a discovery proceeding brought pursuant to the provisions of sections 205 and 206 of the Surrogate's Court Act. The purpose of the proceeding is to compel the Syracuse Trust Company to pay to the petitioner, Mary E. O'Neil, administratrix c. t. a., the sum of $1,410.80 and interest, money belonging to the estate and claimed to have been diverted by Mr. O'Neil, the former executor of the will of the above-named decedent, and the Syracuse Trust Company. The last will and testament of the testatrix was duly admitted to probate in this court on April 20, 1931, and letters testamentary were issued to Fred J. O'Neil. At the time of the death of the testatrix she was the owner of fourteen income shares of the Corn Hill Building and Loan Association of Utica. After her death, and on August 18, 1931, the Corn Hill Building and Loan Association issued in payment therefor its check for $1,410.80 to the order of " Estate of Mary E. Hopkins, Fred J. O'Neil, Ex.," payable at the Citizens Trust Company of Utica, N. Y. Thereafter and on August 20, 1931, the check was indorsed " Estate of Mary E. Hopkins, Fred J. O'Neil, Ex.," " Fred J. O'Neil," and on the same day this check was deposited in the Syracuse Trust Company to the credit of Fred J. O'Neil. The check was collected by the Syracuse Trust Company in due course. On the same date, viz., August 20, 1931, Fred J. O'Neil authorized the Syracuse Trust Company to take up for his account and risk 400 shares of Hup Motors at seven and one-half to be charged to his account. The amount involved in that transaction was $3,036.04 and a service charge of $7.50. At the same time Fred J. O'Neil executed and

delivered to the Syracuse Trust Company his promissory note for $1,625 payable on demand and pledged as collateral security the 400 shares of Hup Motors. On the same date mentioned the Syracuse Trust Company authorized the Federal Reserve Bank to take up the Hup stock and charge the purchase price of $3,036.04 to its account. The stock was returned to the Syracuse Trust Company and held by it as collateral security for the payment of the O'Neil note for $1,625.

It is the contention of the petitioner that the proceeds of the check for $1,410.80, being the property of this estate, were used and diverted to purchase the Hup stock with the knowledge and consent of the respondent Syracuse Trust Company, which participated in the unlawful transaction. There is little or no dispute concerning the facts of this transaction. The evidence is that Mr. O'Neil, on the date mentioned, took the Corn Hill Building and Loan Association check, indorsed as already stated, and laid it on the desk of the secretary of the Syracuse Trust Company, and at the same time he signed a note heretofore described for $1,625 which made up the balance of the purchase price of the Hup Motor stock. The evidence is that no part of the proceeds of the check, amounting to $1,410.80, has ever been repaid to the estate, its lawful owner. At the time of this transaction Fred J. O'Neil had a small balance in his account.

Section 40, subdivision 4, of the Surrogate's Court Act, in enumerating the various acts of which this court has jurisdiction, states as follows: " To enforce against a respondent, the delivery of personal property or the payment of the proceeds or value of the personal property belonging to or withheld from an estate."

It is well settled that this proceeding is not available for the mere collection of a debt.

In the case at bar the theory of the petitioner is based on the fact that we have here definite and tangible property belonging to the estate as represented by the check mentioned which is identified and earmarked. (*Cohnfeld* v. *Tannebaum*, 176 N. Y. 126.)

In the recent case of *Matter of Hammer* (237 App. Div. 497, at p. 502) the court announced the rule: " If, however, the decree is based on the theory that the account or deposit with the appellant trust company is but the avails of proceeds of specific property belonging to the estate which the executors and administrators had the right to recover, then the decree is within the jurisdiction of the court."

Upon the facts and law applicable thereto, I think that the court has jurisdiction.

It is the contention of the respondent Syracuse Trust Company that in no event should it be held liable in excess of the sum of $490.61. These figures are arrived at by applying the sum of $1,625, represented by the note and the small balance owned by O'Neil, which would necessitate invading the estate money to the extent of $490.61. It is urged that a presumption exists that the respondent O'Neil would first use his own personal funds to the extent available. No authorities are cited supporting this contention, and, in any event, I think that the facts are otherwise. The inference to be drawn from an examination of the testimony is that the respondent O'Neil produced the check belonging to the estate, and without having deposited the same, negotiated a loan for $1,625 with an official of the respondent bank as before stated. The amount of the estate check and the amount of the O'Neil note indicate that it was the intention of all parties concerned that these amounts should balance the cost of the Hup Motor stock, and this was testified to by Mr. O'Neil. The deposit of the estate check in the personal account of the executor rendered him guilty of a misdemeanor. (Surr. Ct. Act, § 231.)

There is no escape from the conclusion that this irregularity was well known to the bank and placed it on inquiry as to the validity of subsequent transactions involving the estate money. I am not overlooking the rule that the bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106.)

Under the facts of the case at bar, we have actual notice of the unlawful act of the then executor from its inception, which I think binds the bank.

In the case of *Van Alen* v. *American National Bank* (52 N. Y. 1) the court announced the rule: "When a trustee deposits trust moneys in his own name in a bank with his individual money, the character of the trust money is not lost but it remains the property of a *cestui que trust*. If such money can be traced into the bank, and it remains there, the owner can reclaim it. When deposited, the bank incurred an obligation to repay it, which is not lessened or impaired because it incurred, at the same time an obligation to pay other money belonging to the agent individually." (See *Matter of Gauthier*, 143 Misc. 788; *Gilliland* v. *Lincoln Alliance Bank & Trust Co.*, 239 App. Div. 68.)

I hold and decide that the respondent Syracuse Trust Company is liable to this estate in the sum of $1,410.80, with interest thereon from the 20th day of August, 1931.

Decreed accordingly.