**Billy N. MYERS, Guardian of the Estate of Frank O. Thronson, an incompetent, and Frank O. Thronson, Appellants,**

v.

**Arthur C. SILL, former Guardian of the Estate of Frank O. Thronson, an incompetent, Appellee.**

No. 1531.

Supreme Court of Alaska.

June 5, 1972.

---

James K. Tallman, Anchorage, for appellants.

Kenneth B. Jacobus, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, amicus curiae for Fireman's Fund Insurance Co.

Before BONEY, C. J., and RABINOWITZ, CONNOR and BOOCHEVER, JJ.

OPINION

BOOCHEVER, Justice.

On November 1, 1968 Arthur Sill was appointed as guardian of the estate of Frank Thronson, an incompetent.[1]  On May 18, 1971 the superior court approved the amended final account of Sill.  Prior thereto Billy N. Myers had been appointed

1. Thronson was declared incompetent because of excessive drinking and his related financial problems.  As his testimony indicates, he is alert and capable when not drinking.

as guardian. Myers as guardian is joined by Thronson in this appeal from the order approving Sill's final account.

Both Sill and Thronson were independent trucking contractors who owned and operated trucks. The principal specifications of error concern the purchase of a 1958 Kenworth truck by Sill and the proceeds received from the operation of that truck.

On December 5, 1968 Sill and his wife obtained a personal loan from the First National Bank of Anchorage in the amount of $6,888.48.[2] He testified that he obtained the loan to purchase the Kenworth truck from J. B. Gottstein Company for use in his own business. The loan was secured by a lien on the truck and other personal assets of the Sills. Title to the truck was transferred to Sill prior to his making payment.

Thronson had owned trucks that were encumbered to the National Bank of Alaska. Upon his being declared incompetent the trucks became part of the guardianship estate. After his appointment as guardian Sill learned that the bank was threatening to dispose of the vehicles due to the delinquency of the Thronson loan. To prevent such disposition of the Thronson vehicles and to obtain their release, Sill utilized $5,000 from the personal loan he had obtained from the First National Bank of Anchorage. He applied the money to repayment on the Thronson estate debt to the National Bank of Alaska.

Subsequently Sill received authority from the court to borrow $20,000 on behalf of the guardianship estate and to secure this loan with guardianship assets. Sill borrowed $14,000 from the First National Bank under this authorization.

The $14,000 was deposited in Sill's personal checking account on May 9, 1963.[3] Soon thereafter Sill paid for the Kenworth truck by means of a $5,500 check drawn on the commingled account. Sill testified that the $5,500 was a repayment to himself of the $5,000 previously loaned plus a pro rata share of the carrying charges on the $6,888.48 which he had personally borrowed from the First National Bank of Anchorage on December 5, 1968.[4] There was also some vague testimony that Sill had represented that the Kenworth truck was part of the estate. That testimony was, at best, sufficient only to raise an issue of fact.

■ The effect of the guardian's commingling of funds is basic to the disposition of all of the contentions that have been raised. The parties agree that a guardian who has commingled funds must clearly identify his own contribution to the fund before he can claim it.

■ When funds have been commingled the burden of proof rests on the guardian to establish by clear evidence what portion belongs to him.[5] Unless Sill satisfied that burden of proof, the presumption that all of the money in the account belonged to the estate[6] would have compelled the trial court to find the entire account to be part of the Thronson estate. It was undisputed that Sill loaned the guardianship estate the sum of $5,000. The court below was satisfied that Sill had used the $5,500 of the commingled account to repay himself for his loan to the estate plus carrying charges, and thus had over-

2. The loan was for $6,000 plus $888.48 "carrying charges and interest, prepaid."

3. The witness from the bank stated that he had a copy of the court order authorizing the loan and that it was his understanding that the $14,000 was to be administered by the guardian. It is not clear why the bank did not require Sill to open a separate guardianship account.

4. The additional $500 represented Sill's rough proration of the portion of the $888.48 carrying charges attributable to the $5,000 which he loaned to the estate. *Supra* note 2. No issue of the propriety of this charge to the estate was raised on this appeal.

5. Clark v. Thompson, 309 Ky. 850, 219 S.W.2d 22, 27 (1949); 39 Am.Jur.2d Guardian and Ward § 96, at 81–82 (1968).

6. Cohnfeld v. Tanenbaum, 176 N.Y. 126, 68 N.E. 141, 142 (1903).

come the presumption against him. After reviewing the record we cannot say that the superior court's findings were clearly erroneous.[7] The funds used to purchase the 1958 Kenworth truck were Sill's and, therefore, it and the profits earned by its use were his alone.

■ During the summer of 1969 Sill used the 1958 Kenworth truck in the Kenai area in work for the United States Bureau of Land Management. Thronson also used one of his trucks in work for that Bureau. Dual objections are made to the accounting with reference to that employment. First, Myers, the new guardian, contends that the 1958 Kenworth truck should be regarded as the property of the estate so that the earnings from its use would be an asset of the estate and second, that Sill was utilizing the Kenworth truck claimed by him in preference to securing employment for Thronson's Peterbilt truck. We have indicated our approval of the court's finding that the Kenworth truck had been purchased with Sill's funds and accordingly was owned by him. That holding disposes of the first of these objections. The claim that the guardian was favoring his own equipment over that of the ward arises out of the fact that Sill's 1958 Kenworth earned substantially more from the Bureau of Land Management than did Thronson's equipment. It appears that on or about August 12, 1969, Sill and Thronson drove their respective trucks from Anchorage intending to make them available to the Bureau for work in connection with fighting a Kenai fire. Thronson's truck, however, broke a drive line enroute and did not reach the site of the fire until August 26. It was thus able to operate on the Kenai job only from that date until the project terminated on September 2.

The trial court found that Thronson's Peterbilt truck was not present so as to be available for the work at Kenai and, therefore, could not have been employed in that work so as to receive income for the estate. The finding was based on undisputed evidence.

■■ We have repeatedly said that the findings of the trial court will not be disturbed on appeal unless they are "clearly erroneous,"[8] and that a finding is not clearly erroneous unless from a review of the entire record the court is left with a "definite and firm conviction that a mistake has been made."[9] The findings here in dispute were not clearly erroneous.

Two additional statements of points on appeal set forth in general terms that the court erred "in finding that the accounting of guardian, Arthur Sill, was correct and proper" and "in failing to require the guardian to provide a proper and detailed accounting."

■ Our rules require a concise statement of the points on which appellant intends to rely[10] and such broad allegations "[fail] to inform the opposing party and the court of matters we shall be called upon to decide."[11] Neither by means of their brief nor by oral argument have appellants pointed out any particular item with reference to which the court so "erred." We have nevertheless reviewed the accounting and the objections thereto and cannot conclude that the superior court acted erroneously in approving the accounting.

While we strongly disapprove of the commingling of funds by a guardian we cannot find on the basis of the record here presented that the trial court erred in approving the guardian's final report. Accordingly, the Order Approving Final Account as Amended is affirmed.

ERWIN, J., not participating.

7. E. g., Palfy v. Rice, 473 P.2d 606, 609 (Alaska 1970), and citations at note 3 therein.

8. Id.

9. Id. quoting State v. Phillips, 470 P.2d 266 (Alaska 1970).

10. Sup.Ct.R. 9(e).

11. Fairview Public Utility Dist. No. 1 v. City of Anchorage, 368 P.2d 540, 542 (Alaska 1962).